JON M. SANDS
Federal Public Defender
**J. LEONARDO COSTALES**
Assistant Federal Public Defender
Louisiana State Bar № 35721
407 W. Congress, Suite 501
Tucson, AZ 85701-1355
Telephone: (520)879-7500
*Attorney for Defendant*
Leo_Costales@fd.org

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR21-0672-TUC-RM (DTF) |
|---|---|
| Plaintiff, | |
| v. | MOTION IN LIMINE TO PRECLUDE THE INTRODUCTION OF EXPERT TESTIMONY |
| Teddy Joseph Von Nukem, | |
| Defendant. | |

Teddy Joseph Von Nukem, through undersigned counsel, respectfully moves the Court to preclude the introduction of the expert testimony of Special Agent Justin Wipf of the Drug Enforcement Agency because he lacks the qualifications necessary to render expert testimony on the proffered topic. In addition, the notice fails to adequately detail his methods and the bases for expert opinions. In the alternative the defense requests a *Daubert* hearing on Agent Wipf's qualifications, proposed expert opinions, and methodologies. The defense requests that any *Daubert* hearing be set on or before the currently scheduled trial date of January 30, 2023.

1

The government has noticed its intent to call Drug Enforcement Agency Special Agent Justin Wipf to provide expert testimony on the structure, operations, and practices of a drug trafficking organization (DTO), and on the value of fentanyl. Doc. 59. For the reasons in this motion, the Court should preclude Agent Wipf from testifying as an expert witness.

Federal Rule of Evidence 702 assigns to the district court the role of gatekeeper and charges the court with assuring that expert testimony "rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); see also Fed. R. Evid. 104(a). The gatekeeper role "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592-93. This gatekeeper role also applies to non-scientific expert testimony which is based on technical knowledge or specialized knowledge; this type of testimony must also be reliable. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). A note to Rule 702 offers some additional guidance: "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Fed. R. Evid. 702 advisory committee's note (2000).

In the instant case, the government proposes to offer as an expert an agent who has only been with the DEA since 2018. Doc. 56-1. In the supplemental disclosure, Bates 98-99, Special Agent Wipf indicates that they joined the DEA in January 2018 and completed

2

the Basic Agent Training program in May of 2018. Agent Wipf proffers having "participated in multiple investigations involving illegal drugs and proceeds." Agent Wipf also proffers that they have never been called to testify as an expert witness.

Notably missing from either the disclosure, notice, or exhibit, is any indication that Agent Wilf has specialized training on the topics where they are proposed to be an expert. There is no information within the CV or disclosure showing that the agent has given trainings on the operation and structure of Drug Trafficking Organizations, or on the value of fentanyl. There is no indication that the agent has received special certifications. Seemingly the government hopes to have Special Agent Wipf designated as, effectively, an ex-officio expert by virtue of their position as a DEA agent because nothing within their CV or the disclosure shows them to have specialized knowledge or expertise in the area that they would present expert testimony. *Cf. Unied States v. Hankey*, 203 F.3d 1160, 1168-69 (9th Cir. 2000) (finding that the district court had properly certified an officer as a gang expert when, among other facts, it was found that the officer had been with the Compton Police Department for 21 years, worked undercover with thousands of gang members, received formal training in gang structure and organization, and had taught classes about gangs).

Regarding one of their key areas of testimony, the agent says simply "Bulk fentanyl price as of information provided in 2021 is approximately $17,000-$24,000 per kilogram giving the total value related to this case of 256,360-$361-920." Bates 98. Because the source of the information on price is written is passive voice, it is impossible for a reader to discern where that price comes from. The agent's methodology, as applied to the case,

is clearly to multiply the price per kilogram by the alleged amount of kilograms in the case. However, the methodology and the reliability of the agent's determination of the base price of fentanyl is unknown, except that it was "provided in 2021."

The agent's second major area of proposed testimony is the following:

> Based on my training, experience and conversations with other law enforcement officials, I know that the experienced and well-structured Drug Trafficking Organizations (DTOs) usually compartmentalize their illegal operations. These DTOs (Drug Trafficking Organizations) subcontract their operations to sub-organizations, also known as (a/k/a) "cells," who work independently from each other to facilitate the smuggling and distribution of controlled substances. For instance, these cells carry out different tasks to include: the receipt and transportation of the controlled substances from the source country; the importation/smuggling of the controlled substances into the United States; the temporary storage of the controlled substances as they await follow-on transportation; the transportation of the controlled substances to different cities within the United States; and the transportation of bulk cash derived from the sale of the controlled substance back to the source(s) of supply of the controlled substances. The purpose of compartmentalizing DTO operations is to insulate the organization from one individual having too much information in the instance of arrest or cooperation with law enforcement. By doing this the DTO believes they will have continuity of operations after such an event.

Bates 98-99.

In the notice, the government says: "SA Wipf will offer testimony regarding how drug trafficking organizations are typically structured, how these organizations are similar to a business in that they have a product which needs a supply chain to be distributed, how the organizations use individual couriers to transport controlled substances." Doc. 56. This type of expert testimony is not new. *See United States v. Pineda-Torres*, 287 F.3d 860 (9th Cir. 2002) (reversing a conviction, in a non-conspiracy border drug courier case, where the

4

government introduced expert testimony about the structure of a drug trafficking organization without any corresponding evidence establishing between a link between the defendant and the drug trafficking organization). Although in the instant case the government has charged two conspiracy counts in the indictment, the government has provided no evidence that would allow them to fairly suggest that Mr. Von Nukem was in any way involved in the operations of a DTO, the DTO's "cells," the storage of controlled substance, or transportation of bulk cash. Although the holding of *Pineda-Torres* was limited to non-conspiracy cases, in the instant case the government appears to seek use the "blueprint" evidence to impute Mr. Von Nukem's involvement within a larger drug trafficking organization without direct evidence of said involvement. *Pineda-Torres*, 287 F.3d at 865 ("There is no direct evidence associating the defendant with a drug trafficking organization so the expert uses the 'blueprint' structure of international drug trafficking organizations as a means of doing so. Because 'criminal prosecutions cannot be blueprinted, but must be tailored to the charges and facts of each case in consideration of the individual rights of each defendant,' this method of imputing knowledge lacks any probative value and is impermissible.") (quoting *United States v. Vallejo*, 237 F.3d 1008, 1017 (9th Cir. 2001), amended by 246 F.3d 1150 (9th Cir. 2001)). For these reasons, the agent's proposed second area of testimony, regarding DTO structure, lacks relevance to the case and creates a high risk of undue prejudice with no corresponding probative value. *See United States v. Sepulveda*-Barraza, 645 F.3d. 1066, 1072 (9th Cir. 2011) ("In sum, expert testimony on drug trafficking organizations and the behavior of unknowing couriers is admissible when relevant, probative of a defendant's knowledge, and not unfairly

prejudicial under the standard set forth in the Federal Rules of Evidence."); *see also* Fed. R. Crim. P. 401 and 403. As such, and because the agent in any event lacks the qualifications and expertise to testify as an expert on the topic, the Court should preclude this testimony.

Finally, Agent Wipf's third area of proposed testimony is as follows: "Based on my training and experience it is unlikely that a DTO would entrust a high value illicit narcotics shipment to an individual that is not a trusted member of the network with a proven track record." Bates 99. For the previously mentioned reasons, the agent lacks the qualifications to make such an assessment and does not describe their methodology that they used in reaching said conclusion. This opinion should also be precluded.

Although the government has recently averred that they would only seek to use Agent Wipf's testimony in rebuttal, Doc. 66 at 4-5, the agent's testimony should also be precluded in rebuttal.

For the reasons above, Agent Wipf should be precluded from testifying as an expert on drug value, the structure of DTO's, the likelihood of a DTO entrusting "a high value illicit narcotics shipment that is not a trusted member of the network with a proven track record," or on any other topic. If the Court considers allowing such testimony, the defense respectfully requests an opportunity to examine the proposed expert on their qualifications at a *Daubert* hearing scheduled on or before the trial date of January 30, 2023.

//

//

//

**RESPECTFULLY SUBMITTED:** January 6, 2023.

JON M. SANDS
Federal Public Defender

*/s/ J. Leonardo Costales*
**J. LEONARDO COSTALES**
Assistant Federal Public Defender